UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

UNITED STATES OF AMERICA,           :

            - v. -                  :           05 Cr. 00004 (WHP)

WILLIAM GENOVESE,                   :

                  Defendant.        :

-------------------------------X

**DEFENDANT WILLIAM GENOVESE'S REPLY TO THE GOVERNMENT'S OPPOSITION
      TO THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

                          LEONARD F. JOY, ESQ.
                          The Legal Aid Society
                          Federal Defender Division,
                          **SEAN HECKER, ESQ.**
                          Attorneys for Defendant
                              **WILLIAM GENOVESE**
                          52 Duane Street, 10th Floor
                          New York, New York  10007
                          Tel.: (212) 417-8737

TO:   DAVID E. KELLEY, ESQ.
      **United States Attorney**
      **Southern District of New York**
      **One St. Andrew□s Plaza**
      **New York, New York 10007**
      **Attn:  ALEXANDER SOUTHWELL**
              **THOMAS G. A. BROWN**
              **Assistant United States Attorneys**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

UNITED STATES OF AMERICA,        :

            - v. -               :        05 Cr. 00004 (WHP)

WILLIAM GENOVESE,                :

                  Defendant.     :

-------------------------------X

**DEFENDANT WILLIAM GENOVESE'S REPLY TO THE GOVERNMENT'S OPPOSITION
TO THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

<u>INTRODUCTION</u>

William Genovese moved to dismiss the indictment as
unconstitutional on two grounds: first, that the Economic
Espionage Act's ("EEA's") definition of a "trade secret," found
in 18 U.S.C. § 1839(3), is unconstitutionally vague in two
different respects as applied to the facts of this case; and
second, that the statute violates the First Amendment because it
is unconstitutionally overbroad and chills substantial amounts of
protected speech, rendering the EEA invalid on its face.

The government responds to Mr. Genovese's as-applied
vagueness challenges by arguing that the statute is not
unconstitutionally vague in any respect, and that Mr. Genovese
cannot so attack it because he knew that the source code he found
on the Internet was stolen. The government opposes defendant's
First Amendment challenge by contending that the overbreadth

doctrine is "implicated only when a law directly regulates speech or expression," and then contends that the EEA "reaches no protected speech at all," thereby surviving any challenge.

Neither argument is persuasive. First, the government misstates the legal standard governing as-applied (as opposed to facial) constitutional challenges. Then, the government contends, wrongly, that because Mr. Genovese is accused of knowing that the portions of source code he found on the Internet were previously <u>stolen</u>, he can also be assumed to have known that then-publicly available source code was a <u>trade secret</u>. There is no support whatsoever for the government's novel theory, and it should be rejected here.

The government fails to cite even a single case in which the government has previously attempted to prosecute someone under the EEA where the purported "trade secret" was found in a public place – in this case, on the Internet – by someone with no relationship to the thief of the purported trade secret. In this narrow, unprecedented context, the EEA fails to provide the defendant with sufficient notice of whether his conduct in downloading and transmitting the source code was prohibited.

Further, the government's opposition to defendant's overbreadth challenge is based on the unsupported legal proposition that only laws which directly target speech or expression can be subjected to overbreadth analysis. The government's position is wrong as a matter of law. The government's contention that the statute reaches only unprotected speech and, therefore, that it is not overbroad is also flawed. For these reasons, the government's position should be rejected.

I. THE DEFENDANT'S MOTION TO DISMISS ON VAGUENESS GROUNDS SHOULD BE GRANTED.

The government fundamentally misconstrues Mr. Genovese's void-for-vagueness challenge to the EEA. In its discussion of "applicable legal principles," the government cites a series of Supreme Court cases that stand for the principle that a court should exercise restraint before striking down a statute on constitutional grounds. (Govt. Mem. at 6-7.) But not a single case cited by the government involved an as-applied, void-for-vagueness challenge. In such cases, the Court is asked to rule only that the statute cannot be constitutionally applied to this particular defendant, not that the statute is invalid in all respects. United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003). As a result, the "heavy burden" that attaches to facial challenges (Govt. Mem. at 7), has little applicability in the

context of a narrow, as-applied challenge.  The government's reliance on this precedent in connection with Mr. Genovese's Due Process arguments is misplaced.

The government also fails to address the core of Mr. Genovese's claim that the EEA is unconstitutionally vague as applied to the unusual facts of this case.  It bears repeating that Mr. Genovese stands accused of downloading and offering to sell portions of the source code for two computer programs that already had been leaked onto the Internet by as-yet unknown third parties.[1]  In these circumstances, the EEA's vague definition of "trade secrets" failed to provide Mr. Genovese with reasonable notice about whether his conduct was prohibited.

---

[1] In its discussion of the case facts, the government twice suggests to the Court that this case involves the alleged downloading and sale of the <u>entire</u> source code for Windows NT 4.0 and Windows 2000.  (<u>See</u> Govt. Mem. at 1 ["This charge stems from Genovese's obtaining and then selling . . . a stolen copy of the source code to two computer programs . . ."] and 3 ["Some time on or about February 12, 2004, the source code for both Windows NT 4.0 and Windows 2000 was apparently made available . . ."]  The government's description is inaccurate.  Only <u>portions</u> of the source code for each of the two programs were leaked onto the Internet.  The government knows, but has yet to disclose, which portions (and how great a percentage) of the source code are, in fact, at issue.  Regardless, the government's contention that Genovese's alleged $20 sales of the portions of the source code he obtained on the Internet involved products worth "hundreds of millions – if not billions – of dollars" (Govt. Mem. at 3), is even more of a stretch than it first appears.

A.     The EEA's "Generally Known to the Public" Phrase is
       Unconstitutionally Vague as Applied to Mr. Genovese.

The government attempts to erect a straw man, suggesting
that Mr. Genovese's position is that "information can qualify as
a trade secret simply if it is not 'generally known' to the
public" (Govt. Mem. at 19).  That is plainly not Genovese's
position.  Under the EEA, a "trade secret" must, among other
things, "derive[] independent economic value, actual or
potential, from not being generally known to, and not being
readily ascertainable through proper means by, the public."  18
U.S.C. § 1839(3)(A).  Under the statutory definition, not being
"generally known to the public," is a necessary – although,
alone, insufficient – condition for achieving "trade secret"
status.

That a trade secret must remain unknown to outsiders – i.e.,
"secret" – is hardly a controversial proposition.  Indeed, it has
long been a requirement, both at common law and under the Uniform
Trade Secrets Act, that the information sought to be protected as
a trade secret remain undisclosed.  See e.g., Kewanee Oil Co. v.
Bicron Corp., 416 U.S. 470, 475 (1974) ("The subject of a trade
secret must be secret, and must not be of public knowledge or of
a general knowledge in the trade or business."); Religious Tech.
Center v. Netcom On-line Comm. Servs., 923 F. Supp. 1231, 1254

("Once trade secrets have been exposed to the public, they cannot later be recalled."); <u>Enterprise Leasing Co. v. Ehrnke</u>, 3 P.3d 1064, 1069 (Ariz. Ct. App. 1999) (applying Uniform Trade Secrets Act: "the hallmark of a trade secret obviously is its secrecy . . . matters that are public knowledge are not safeguarded as trade secrets"); 1 Milgrim on Trade Secrets § 1.05[1], at 1-197 (2000) ("Since secrecy is a requisite element of a trade secret, unprotected disclosure of the secret will terminate that element and, at least prospectively, forfeit the trade secret status"). Secrecy is also a requirement under the EEA.  The problem, however, is that the EEA's requirement that the information derive value from not being "generally known to the public" provides insufficient guidance to someone, like Genovese, who found the information on the Internet,[2] as well as to the law

<hr>

[2] Contrary to the government's claim, there is nothing even marginally "misleading" (Govt. Mem. at 20 n. 11) about Genovese's statement that the leaked source code was widely available and obtained by numerous people on February 12, 2004, the day he allegedly offered to make it available to even more people. Indeed, as set forth in counsel's declaration, one news article reported, <u>on February 12th</u>, that the code "was on peer-to-peer networks and IRC (Internet relay chat) today . . . .  Everybody's got it – it's widespread now."  Robert Lemos, Microsoft Probes Windows Code Leak, News.com, Feb. 12, 2004, *available at* <u>http://news.com.com/2102-7349_3-5158496.</u>  That is both the blessing and the curse of the Internet: once something is made available on the Internet, it becomes immediately available to many millions of people.

Mr. Genovese cited <u>DVD Copy Control Assoc. v. Brunner</u>, 116

enforcement officers who have to enforce the EEA in that context. The government's effort to shift the focus to whether the information is valuable because it is not "generally known to the public" amounts to an artful dodge; it does absolutely nothing to shed light on the meaning of the "generally known to the public" phrase, especially not in the unprecedented context of someone who finds the information on the Internet. This aspect of the EEA's trade secrets definition is vague for the reasons outlined in Mr. Genovese's brief.

Indeed, the government never even tries to answer the most basic question posed by Genovese's vagueness challenge: how widespread does the public disclosure over the Internet have to

---

Cal. App. 4th 241, 251, 10 Cal. Rptr. 3d 185, 192-93 (Cal. Ct. App. 2004), which involved an attempt to enjoin the disclosure of putative trade secrets, not to support an argument that dissemination over the Internet automatically invalidates trade secret status; rather, the case is noteworthy because if one cannot determine – without a civil trial – whether dissemination over the Internet renders information "generally known to the public," how can a criminal defendant be expected to determine that his conduct in downloading or offering to sell information found on the Internet violated the EEA?  As one commentator put it while decrying the EEA's vague trade secrets definition: "A description rather than a definition of a trade secret and a manipulable test to determine the issue may be acceptable in a civil suit when the penalty is money damages.  The question of whether the material is a trade secret can be determined at trial.  But in a criminal action, whether information is protected should be clear to citizens before trial."  Geraldine Szott Moohr, The Problematic Role of Criminal Law in Regulating Use of Information: The Case of the Economic Espionage Act, 80 N.C.L. Rev. 853, 881 (2002).

be before the disclosed information becomes "generally known to the public" under the EEA?  Because the EEA does not provide a reasonably clear answer to that question, it is unconstitutionally vague as applied to Mr. Genovese.

The government's attempt to find support for its position in United States v. Hsu, 40 F. Supp. 2d 623 (E.D. Pa. 1999) is surprising.  In Hsu, the court echoed the thrust of Genovese's argument that the "generally known to the public" phrase is vague; indeed, the court stated that it was "much troubled by the EEA's vaporous terms."  See Hsu, 40 F. Supp. 2d at 630.  The court's ruling that the EEA was not unconstitutional in that case was necessarily fact-specific.  And there, unlike here, the court found that the defendant, who obtained the information from an undercover FBI agent posing as a company insider, was "unambiguously told that [the] undertaking [was] illegal."  Id. at 631.  The court in Hsu also noted that it was "put[ting] aside its considerable disquiet about the EEA's language" because the defendant "was charged only with the inchoate offenses of attempt and conspiracy (rather than the completed offenses)."  Id.  As a result, according to a prior Third Circuit ruling, the government only needed to prove that the defendant believed he was dealing in trade secrets, not that he actually was.  Id. at 629 (citing United States v. Hsu, 155 F.3d 189, 203-04 (3rd Cir. 1998)).

The government's attempt to equate Mr. Genovese with the defendant in Hsu is futile.  The government argues that "Genovese also knew his actions to be illegal" because he was aware that the portions of source code he advertised for sale had been "jacked," or stolen (Govt. Mem. at 23).  But even assuming Mr. Genovese knew the leak of the source code onto the Internet was unauthorized, or that the person who leaked it had "jacked" it, that does not answer the question of whether the source code was a trade secret at the time Genovese found it on the Internet.  If it was not, or if Genovese believed it was not, then Genovese's alleged actions, while misguided, do not violate the EEA.  Thus, while the Hsu court's discussion of the uncertainty of the "generally known to the public" requirement are relevant, its precise holding plainly is not.[3]

_____

[3] In its supplemental April 18, 2005 letter, the Government also cites United States v. Krumrei, 258 F.3d 535, 537 (6th Cir. 2001).  Although not mentioned in the government's letter, the Krumrei case concerned a vagueness challenge to the EEA based only on the "reasonable measures" language of the EEA's trade secrets definition.  See Krumrei, 258 F.3d at 538 ("Defendant specifically argues that the term 'reasonable measures' in § 1839(3)(A) is unconstitutionally vague . . . .").  The defendant in Krumrei did not challenge the "generally known to the public" phrase.  Moreover, the defendant in Krumrei admitted at his guilty plea that he "should have known" that the information he obtained directly from a corporate insider constituted a "trade secret".  Id. at 539.  In those circumstances, the Sixth Circuit, citing Hsu, rejected the defendant's vagueness challenge, stating that "defendant cannot claim that the statute is vague when he clearly was aware that his actions fell within the activity

B.     The EEA's "Reasonable Measures" Phrase is
       Unconstitutionally Vague as Applied to Mr. Genovese.

The government defends the precision of the EEA's requirement that the owner take "reasonable measures" to maintain secrecy by simply asserting that this definition "is not complicated or unclear and is readily understandable by ordinary people" (Govt. Mem. at 25). The government argues that "one need not be a company insider . . . to understand that a company like Microsoft would take reasonable steps to preserve the secrecy of its source code" (Id). Finally, in what amounts to a <u>non sequitur</u>, the government claims that because Mr. Genovese knew that the source code had been stolen, "he obviously knew that any safeguard measures had been circumvented and his knowledge of Microsoft's particular security measures is thus irrelevant" (Id). The government's arguments prove far too much.

One might presume that a company like Microsoft would take steps to protect the secrecy of its source code. But such a presumption cannot be read into the EEA's trade secrets definition, lest the "reasonable measures" requirement be rendered entirely meaningless. Moreover, the fact that Mr. Genovese found the portions of leaked source code on the Internet

_____

proscribed by the statute." <u>Id.</u> Because neither the EEA nor the facts made Genovese "clearly aware" that his conduct fell within the activity proscribed by the statute, <u>Krumrei</u> is inapposite.

and described them as "jacked" provides no basis for assuming
that he knew that Microsoft took "reasonable" security measures.
Indeed, the only thing Mr. Genovese knew was that the security
measures taken had proven ineffectual.

Once again, the government relies too heavily on its claim
that Mr. Genovese knew that the source code was previously
misappropriated or stolen by an unknown third party.  Even if
true, that does not answer the question whether the leaked code
was a "trade secret" at the time Mr. Genovese acquired it on the
Internet.  Because Mr. Genovese was not in a position to know
what measures Microsoft took to preserve the secrecy of its
source code, and because the statute provides no objective
criteria by which he (or law enforcement officers) could judge
whether the measures actually taken were "reasonable," the EEA
did not afford him with a "reasonable opportunity to understand"
what conduct is prohibited.  As a result, the EEA is
unconstitutionally vague as applied to the facts of this case.

II.  THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED ON
     THE SUBSTANTIAL OVERBREADTH OF THE EEA SHOULD BE GRANTED

When responding to Mr. Genovese's First Amendment challenge,
the government again misstates the governing legal principles.
The government asserts that "the law is well-settled that
overbreadth is implicated only when a law directly regulates

speech or expression" (Govt. Mem. at 27). The government cites City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789 (1984), and United States v. Salerno, 481 U.S. 739 (1987) in support. But neither case stands for this supposedly "well-settled" proposition of law.

In Taxpayers for Vincent, the Supreme Court, in rejecting an overbreadth challenge, simply reiterated the standard it announced in Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973); namely, that "particularly where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well." That standard, by its terms, makes clear that statutes that do not "directly regulate speech or expression" still come within the overbreadth doctrine, assuming First Amendment interests are at stake. In Salerno, the Supreme Court rejected a facial constitutional challenge to the Bail Reform Act under the Fifth Amendment's Due Process Clause and the Eighth Amendment's prescription against excessive bail, and only even mentioned the First Amendment overbreadth doctrine by way of explaining that it has no applicability outside the context of the First Amendment. See Salerno, 481 U.S. at 745.

Rather than addressing the core of Genovese's substantial overbreadth claims (Genovese Mem. at 26-28), the government simply asserts that the EEA "does not affect any speech that the

First Amendment protects." But the government is mistaken.

First, although the EEA is directed at "actions" as opposed to "words," it still has the potential to chill substantial amounts of expressive activity protected by the First Amendment. As noted in Mr. Genovese's initial brief, the scope of information that can constitute a "trade secret" under the EEA is exceptionally broad (Genovese Mem. at 25). Moreover, many of the "actions" prohibited by the EEA are communicative acts, including copying, sketching, drawing, photographing, transmitting, sending, and communicating, so long as the action is undertaken (1) with the intent to convert the information for the economic benefit of the actor, and (2) with the intent or knowledge that the actions will injure the "trade secret" owner. See 18 U.S.C. § 1838(a)(2).

For example, the newspaper reporter who publishes (i.e., transmits or communicates) certain information – say, the secret recipe for Coca-Cola, were that to be leaked onto the Internet – may or may not be violating the EEA, depending on the meaning of the phrase "generally known to the public." Because the "trade secrets" definition is vague, however, the reporter will surely be chilled from publishing the information. The EEA's mens rea requirements would not, as the government claims, render such

publication non-criminal, so long as the reporter published the information for economic reasons, as all publishers do.

As set forth in defendant's initial brief, there are any number of ways that the EEA could have been more narrowly tailored. (<u>See</u> Genovese Mem. at 27.) The government never endeavors to address these arguments. For these reasons and those set forth in Mr. Genovese's initial brief, the EEA violates the First Amendment because it is unconstitutionally overbroad.

<u>**CONCLUSION**</u>

For the above-stated reasons, the EEA is unconstitutionally vague as applied to Mr. Genovese, and unconstitutionally overbroad. Accordingly, the Indictment should be dismissed.

Dated:  New York, New York
        April 21, 2005

                        Respectfully Submitted,
                        LEONARD F. JOY, ESQ.
                        The Legal Aid Society
                        Federal Defender Division


                BY:     _____
                        **SEAN HECKER, ESQ.**
                        Attorney for
                        **WILLIAM GENOVESE**