UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                                                       :

UNITED STATES OF AMERICA,                05 Cr. 04 (WHP)
                                                                                                                   :

                -against-                                        MEMORANDUM AND ORDER
                                                                                                                            :

WILLIAM P. GENOVESE, JR.,
      a/k/a "illwill,"                                   :
      a/k/a "xillwillx@yahoo.com,"
                                                                                    :

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

        By Indictment dated January 3, 2005, the Government charged the defendant, William P. Genovese, Jr., with one count of unlawfully downloading and selling a trade secret in violation of 18 U.S.C. § 1832(a)(2). Genovese moves to dismiss the Indictment pursuant to Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure. Genovese contends that the statute criminalizing trade secret theft is facially overbroad in violation of the First Amendment and unconstitutionally vague as applied to him. For the reasons set forth below, Genovese's motion to dismiss the Indictment is denied.

BACKGROUND

        In February 2004, portions of Microsoft Corporation's source code for two of its computer operating systems, Windows NT 4.0 and Windows 2000, appeared on the Internet.[1]

---

[1] "Source code" is the "human-readable code in which software developers write programs." (Compl. ¶ 4(a).) An "operating system" is "the software that controls the allocation and usage of hardware resources such as memory, central processing unit (CPU) time, disk space, and peripheral devices." (Compl. ¶ 4(b).)

(Complaint, dated Nov. 4, 2004 ("Compl.") ¶¶ 3-4; Declaration of Sean Hecker, dated Mar. 16, 2005 ("Hecker Decl.") ¶¶ 3-4.)

The Indictment charges Genovese with downloading, copying, selling and attempting to sell Microsoft source code without authorization. (Indictment ¶ 1.) Specifically, the Government contends that on February 12, 2004, Genovese posted a message on his website offering the code for sale: "win2000 source code jacked . . . and illmob.org got a copy of it . . . im sure if you look hard you can find it or if you wanna buy it ill give you a password to my ftp."[2] (Government's Memorandum in Opposition to Motion to Dismiss ("Govt. Mem.") at 4.) According to the Complaint, an investigator retained by Microsoft responded to the message later that month by sending Genovese an email that offered twenty dollars for the code. (Compl. ¶ 6.) After Genovese accepted the offer, the investigator transferred twenty dollars to Genovese through an online payment service. (Compl. ¶ 6.) Genovese then provided access to the source code through his FTP server. (Compl. ¶ 6.) Microsoft alerted the FBI. (Compl. ¶ 7.) In July 2004, an undercover Government agent contacted Genovese and purchased the Microsoft source code. (Compl. ¶¶ 7-8.) Genovese was arrested and charged with violating 18 U.S.C. § 1832(a)(2).

DISCUSSION

Section 1832 was enacted as part of the Economic Espionage Act of 1996, Pub. L. No. 104-294, 110 Stat. 3488 (the "EEA"). In relevant part, the statute applies to anyone who,

---

[2] "FTP" stands for "File Transfer Protocol." Using an FTP server, computer users may upload and download files over the Internet. (Compl. ¶ 5 n.1.)

> with intent to convert a trade secret, that is related to or included in a product that is produced for or placed in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly . . . without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information.

18 U.S.C. § 1832(a)(2). "Trade secret," in turn, is defined to encompass

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

18 U.S.C. § 1839(3). The statute carries a ten-year maximum term of imprisonment. 18 U.S.C. § 1832(a).

A.  <u>Standard on a Motion to Dismiss the Indictment</u>

The allegations of an indictment are accepted as true on a motion to dismiss. <u>See United States v. Nat'l Dairy Prods. Corp.</u>, 372 U.S. 29, 33 n.2 (1963); <u>Boyce Motor Lines, Inc. v. United States</u>, 342 U.S. 337, 343 n.16 (1952); <u>United States v. Goldberg</u>, 756 F.2d 949, 950 (2d Cir. 1985). "Contrary assertions of fact by the defendant[ ] will not be considered." <u>Goldberg</u>, 756 F.2d at 950 (citing <u>United States v. Von Barta</u>, 635 F.2d 999, 1002 (2d Cir. 1980)).

B.  <u>Overbreadth in Violation of the First Amendment</u>

Genovese argues that Section 1832 violates the First Amendment because it restricts protected speech and sweeps more broadly than necessary.  A statute is unconstitutionally overbroad if there exists "a substantial risk that application of the provision will lead to the suppression of speech."  <u>Nat'l Endowment for the Arts v. Finley</u>, 524 U.S. 569, 580 (1998); <u>see</u> <u>Virginia v. Hicks</u>, 539 U.S. 113, 118 (2003); <u>accord</u> <u>Lerman v. Bd. of Elections in New York</u>, 232 F.3d 135, 144 (2d Cir. 2000).  "When a litigant challenges a statute on its face as overly broad, the prudential limitations against third party standing are relaxed, and the litigant may assert the rights of individuals whose interests might be affected by the statute but who are not before the court."  <u>Lerman</u>, 232 F.3d at 144; <u>see</u> <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 610 (1973).

While the First Amendment protects the formulation of source code and other types of trade secrets encompassed by the EEA, <u>see</u> <u>Universal City Studios, Inc. v. Corley</u>, 273 F.3d 429, 445-46 (2d Cir. 2001), the statute criminalizes their unauthorized copying, duplicating, downloading and uploading.  18 U.S.C. § 1832(a)(2).  Moreover, the EEA limits its reach to such conduct that is done "with intent to convert a trade secret . . . to the economic benefit of anyone other than the owner thereof."  18 U.S.C. § 1832(a)(2).  Such conduct is not protected speech. <u>See</u> <u>United States v. Thompson</u>, 76 F.3d 442, 452 (2d Cir. 1996) ("A prohibition against corrupt acts 'is clearly limited to . . . constitutionally unprotected and purportedly illicit activity.'" (quoting <u>United States v. Jeter</u>, 775 F.2d 670, 679 (6th Cir. 1985))).  Because Section 1832 is specifically targeted toward illegal activity and does not reach protected speech, the statute is not unconstitutionally overbroad.  <u>See</u> <u>Thompson</u>, 775 F.2d at 452.  Accordingly, Genovese's First Amendment challenge fails.

C. <u>Void for Vagueness</u>

The void-for-vagueness doctrine requires that a statute define the criminal offense with sufficient precision "that ordinary people can understand what conduct is prohibited." <u>Kolender v. Lawson</u>, 461 U.S. 352, 357 (1983); <u>accord</u> <u>United States v. Ansaldi</u>, 372 F.3d 118, 122-23 (2d Cir. 2004); <u>United States v. Rahman</u>, 189 F.3d 88, 116 (2d Cir. 1999).  Courts must also "consider whether the law provides explicit standards for those who apply it." <u>Chatin v. Coombe</u>, 186 F.3d 82, 87 (2d Cir. 1999); <u>see</u> <u>Kolender</u>, 461 U.S. at 357.  "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."  <u>United States v. Mazurie</u>, 419 U.S. 544, 550 (1975); <u>accord</u> <u>United States v. Rybicki</u>, 354 F.3d 124, 129 (2d Cir. 2003).

A statute need not define the offense with "mathematical certainty." <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 110 (1972).  "[S]ome inherent vagueness" is inevitable and thus permissible.  <u>Rose v. Locke</u>, 423 U.S. 48, 49-50 (1975).  Nonetheless, the statute must provide "relatively clear guidelines as to prohibited conduct." <u>Posters 'N' Things, Ltd. v. United States</u>, 511 U.S. 513, 525 (1994).  "The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." <u>United States v. Harriss</u>, 347 U.S. 612, 617 (1954).

Genovese does not contend that Section 1832(a)(2) imprecisely describes the prohibited act (<u>i.e.</u>, that an individual is guilty if he "copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys" a trade secret).  Rather, he maintains that Section 1839(3)'s definition of "trade secret" is unconstitutionally vague as applied to the facts of this case and does not afford due process.  Specifically, Genovese argues that having found the

5

source code on the Internet after it had been released to the general public by a third-party, he could not have known that it was "not . . . generally known to . . . the public" and that Microsoft had taken "reasonable measures" to safeguard it.

1. "Not . . . generally known to . . . the public"

Genovese maintains that "he had every reason to believe the code had become publicly available" when he found it on the Internet. (Defendant's Memorandum in Support of Motion to Dismiss ("Def Mem.") at 12.) However, a trade secret does not lose its protection under the EEA if it is temporarily, accidentally or illicitly released to the public, provided it does not become "generally known" or "readily ascertainable through proper means." 18 U.S.C. § 1839(3)(B). Genovese merges these two standards and, in so doing, elevates the standard for trade secret status to one of absolute secrecy. This formulation impermissibly writes the critical modifier "generally" out of the statutory definition and attempts to inject a vagueness otherwise absent from the facts of this case.

Indeed, a reasonable inference from Genovese's website posting is that he knew that the source code derived independent value because it was not "generally known." The Government alleges that he described the code as "jacked" and indicated that others would have to "look hard" to find it elsewhere.[3] (Govt. Mem. at 4.) As such, Genovese was on notice that Microsoft had not publicly released the code and recognized its public scarcity. Moreover,

---

[3] This Court presumes that Genovese used the term "jacked" as an abbreviated form of "hijacked," in the way that "jacked" is employed in hyphenated phrases such as "car-jacked" that have entered the English lexicon. See http://www.urbandictionary.com (June 20, 2005). Accordingly, this Court interprets "jacked" to mean "stolen" or "misappropriated." See, e.g., GameSpot, http://www.gamespot.com/news/2004/10/20/news_6111057.html (June 20, 2005) ("Grand Theft Auto: San Andreas jacked – Less than a week before its release, the wildly anticipated crime game has itself been stolen and republished on the Internet.").

6

because Genovese offered the code for sale and successfully sold it, he was on notice that it derived value from its relative obscurity, notwithstanding that it was available from other sources.  See United States v. Hsu, 40 F. Supp. 2d 623, 630-31 (E.D. Pa. 1999) (rejecting a similar challenge to the definition of "trade secret" where the evidence showed that the defendant "knew (or at a minimum believed) that the . . . information he was seeking to acquire was not 'generally known to' or 'readily ascertainable through proper means by, the public'").

A statute may also be unconstitutionally vague if it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527 U.S. 41, 56 (1999); see Kolender, 461 U.S. at 357.  In this regard, Genovese argues that the statute provided no guidance to law enforcement officials to determine whether the source code constituted a trade secret.  However, just as Genovese's announcement and conduct reflect his belief that the "jacked" source code was valuable because it was not generally known, it provided the FBI reason to believe that Genovese was trafficking in Microsoft's trade secret.

2. "Reasonable measures"

With respect to the "reasonable measures" element of the EEA's "trade secret" definition, Genovese contends that he "was in no position to make a determination about whether Microsoft took any measures to protect the secrecy of its source code, let alone whether those measures were 'reasonable.'"  (Def. Mem. at 17.)

Once again, Genovese's website posting belies any claim that he was a casual Internet browser who happened upon the source code without knowledge of its owner or the manner in which the code entered the public domain.  As discussed above, the posting reveals that Genovese knew that a third-party had "jacked" the source code from Microsoft.   Having

7

acknowledged both that the source code was proprietary to Microsoft and that someone else penetrated whatever safeguards Microsoft enlisted to protect it, Genovese cannot now argue that the statute was insufficient to put him on notice that the source code constituted a trade secret under the EEA.  For Section 1839(3)'s "trade secret" definition to survive a vague-as-applied challenge, a "defendant need not have been aware of the particular security measures taken by" the trade secret's owner, as long as the "defendant knew the information was proprietary." United States v. Krumrei, 258 F.3d 535, 539 (6th Cir. 2001) (noting that the defendant "was aware that he was selling confidential information to which he had no claim"); see also Hsu, 40 F. Supp. 2d at 628 (defendant was told that "the taxol technology in question was proprietary"). In this case, one can infer that Genovese knew not only that the source code was proprietary, but that any protective measures by Microsoft had been circumvented.  At a later stage in this proceeding, Genovese may choose to argue to this Court or to a jury that Microsoft's measures were not "reasonable," or that Genovese could not have known what, if any, measures Microsoft maintained.  For purposes of his vagueness challenge, however, Genovese's knowledge that the source code belonged to Microsoft and that others had stolen it was sufficient for him to "reasonably understand" that the conduct alleged in the Indictment was proscribed by Section 1832(a)(2).  Harriss, 347 U.S. at 617.

        As such, Section 1839(3) defines "trade secret" with "sufficient definiteness" so that an ordinary person in Genovese's position could understand that trafficking in the Windows source code was prohibited by law.  Kolender, 461 U.S. at 357.  As applied to the facts of this case, the statute is not so vague that it violates the defendant's due process.

## CONCLUSION

For the foregoing reasons, Genovese's motion to dismiss the Indictment is denied.

Dated:   June 21, 2005
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.


*Counsel of Record:*

Alexander Southwell, Esq.
Thomas G.A. Brown, Esq.
Assistant United States Attorneys
Office of the United States Attorney for the
     Southern District of New York
One St. Andrew's Plaza
New York, NY 10007
*Counsel for the Government*

Sean Hecker, Esq.
The Legal Aid Society, Federal Defender Division
52 Duane Street, 10th Floor
New York, NY 10007
*Counsel for the defendant*